LUTHER D. HYDE, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hyde v. Comm'r
Docket No. 4640-76. United States Tax Court
T.C. Memo 1981-480; 1981 Tax Ct. Memo LEXIS 258; 42 T.C.M. (CCH) 954; T.C.M. (RIA) 81480; September 2, 1981. *258 Held: (1) Deduction for casualty loss of automobile disallowed where record did not support the view that petitioner was the owners of the automobile. (2) Support payments made to spouse pursuant to deed of separation were periodic and therefore deductible, as under North Carolina law such payments were contingent on the wife's remarriage. Payments made to spouse pursuant to a division of property between husband and wife are not in the nature of support and thus not deductible under section 215. (3) Home office deduction disallowed where business use of home office was incidental. (4) (a) Expenses for travel away from home disallowed for failure to meet substantiation requirements of section 274(d). (b) Deductions disallowed for depreciation of automobile used for travels away from home for failure to show that travels were predominantly business related. (5) (a) Depreciation deduction on 1967 automobile disallowed where petitioner was not the owner of the automobile and had no investment in the property. (b) Depreciation deduction on 1973 automobile disallowed where petitioner failed to prove actual depreciation on automobile exceeded the depreciation allowance built in to *259 reimbursed expenses. (c) Depreciation deduction of employment contract disallowed where contract was acquired at no cost. Costs of obtaining a college education cannot be viewed as depreciable costs of obtaining a contract. Cf. Sharon v. Commissioner, 66 T.C. 515 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). (6) (a) Investment credit on 1967 automobile owned by petitioner's brother disallowed. (b) Investment credit disallowed on 1973 automobile and office furniture as those properties were not section 38 property. (7) Deductions for meals and lodging expenses disallowed for failure to meet substantiation requirements of section 274(d). (8) Payment of premium for accident insurance does not qualify for a medical expense deduction. (9) Deductions for taxes in excess of amount allowed by respondent disallowed for lack of proof. (10) Charitable contributions in excess of amount allowed by respondent not proved. (11) Dependency exemption claimed by petitioner for his mother disallowed where multiple support agreement was invalid and petitioner could not otherwise show that he provided over half of his mother's support. (12) Expenses for professional *260 tax advice disallowed for failure to produce any evidence. (13) Since petitioner was still married at the end of the year in issue, had no dependents living with him, and did not maintain the household in which his mother lived, he cannot qualify for head to household rates and must file as a married individual filing a separate return. (14) Credit for political contributions disallowed for failure to substantiate claimed expenditure. Luther D. Hyde, pro se. Edwina L. Link, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 2,135.23 in petitioner's 1973 Federal income tax. After concessions the issues presented for our determination are: (1) Whether petitioner is entitled to a casualty loss resulting from the demolition of a 1967 Pontiac Firebird automobile and if so, the amount of the casualty loss; (2) Whether payments allegedly made to or on behalf of petitioner's wife qualify as periodic alimony, so as to be deductible under section 215[1]; (3) Whether petitioner is entitled to a deduction for *261 home office expenses (including depreciation of office furniture); (4) Whether petitioner is entitled to a deduction for automobile expenses incurred between September 5, 1973 and December 31, 1973; (5) Whether petitioner's deductions for depreciation on automobiles, and an employment contract for the taxable year are allowable; (6) Whether petitioner is entitled to an investment credit against tax for the taxable year 1973 for the purchase of a 1967 Pontiac Firebird, a 1973 Oldsmobile Cutlass, and office furniture and if so the amount of the credit; (7) Whether meals and lodging expenses allegedly incurred by petitioner while away from home for the period between September 5, 1973 and December 31, 1973 are deductible; (8) Whether petitioner is entitled to a medical and dental expenses deduction in excess of $ 109; (9) Whether a deduction for taxes in excess of $ 798 is allowable to petitioner; (10) Whether petitioner is entitled to a deduction for charitable contributions in excess of $ 50; (11) Whether petitioner may be allowed a depedency exemption for his mother for the taxable year 1973; (12) Whether petitioner is entitled to a deduction of $ 67.40 for professional tax advice; *262 (13) Whether petitioner qualifies for head of household status for the taxable year 1973; (14) Whether petitioner is entitled to a credit against tax in 1973 for political contributions. FINDINGS OF FACT Some of the facts have been stipulated. These facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner Luther D. Hyde was a resident of Washington, D.C. when his petition in this case was filed. For the taxable year 1973, petitioner filed a Federal income tax return with the Internal Revenue Service Center, Memphis, Tennessee. On August 7, 1972 petitioner's brother, Barnell Hyde, purchased a 1967 Pontiac automobile from Mr. James Earl McGaha. An assignment of title to the automobile was executed to Mr. McGaha to Barnell Hyde which was immediately filed at the North Carolina Division of Motor Vehicles. Aetna Casualty and Surety Company insured the 1967 Pontiac, in the name of Barnell Hyde. In November of 1973, the 1967 Pontiac, with Barnell driving, was wrecked as a result of a collision with another automobile. The accident report listed Barnell as the sole owner of the car. The value of the 1967 Pontiac at the time of its *263 demolition was $ 1,050. No insurance recovery was ever had respecting the automobile. At the time of the acquisition of the Pontiac, petitioner was the sole owner of one automobile and a joint owner of another. Subsequently, petitioner also acquired a 1973 Oldsmobile. This purchase occurred after petitioner agreed to transfer at least one of his older cars to his estranged spouse pursuant to a deed of separation. On his return for 1973, petitioner claimed a casualty loss deduction with respect to the wrecked Pontiac in the amount of $ 750. Respondent, in his notice of deficiency, disallowed the entire deduction. OPINION - CASUALTY LOSS Section 165(a) allows the taxpayer a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c)[2] *264 in limiting the losses allowable to an individual provides in pertinent part at section 165(c)(3) that losses or property not connected with a trade or business qualify for a deduction only if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A casualty loss deduction is authorized only when the claimant was the owner of the property with respect to which the loss is claimed. Rink v. Commissioner, 51 T.C. 746 (1969); Draper v. Commissioner, 15 T.C. 135 (1950). The issue of an automobile as the subject of a casualty loss *265 is specifically addressed in section 1.165-7(a)(3), Income Tax Regs. The relevant portion of that section provides: (3) Damage to automobiles. An automobile owned by the taxpayer whether used for business purposes or maintained for recreation or pleasure, may be the subject of a casualty loss * * *. (Emphasis added.) Petitioner claims a $ 750 casualty loss deduction as a result of the demolition of the 1967 Pontiac. He alleges, despite all the evidentiary matter indicating that his brother Barnell was the record owner of the automobile, that he paid the entire purchase price of the car ($ 1,595) in January of 1973 and allowed his brother to borrow the car periodically. Thus, he argues that he is the beneficial owner of the auto and should be entitled to the casualty loss deduction. Our findings of fact expressly state that Barnell Hyde purchased the automobile. Petitioner, at the time of acquisition of the car, was in possession of two other automobiles. The certificate of title and insurance policy on the auto cited Barnell as the owner. All factors, although not individually conclusive, point to the fact that petitioner was not the owner of the automobile. Nothing in the *266 record other than petitioner's own testimony supports ownership of the automobile by petitioner. Accordingly, petitioner is not entitled to a casualty loss on the 1967 Pontiac. FINDINGS OF FACT - ALIMONY DEDUCTION Petitioner and his former wife, Wanda Lee Hyde, were married on or about January 30, 1970. A deed of separation was executed by petitioner and his former spouse on November 14, 1972. Paragraphs four and six of the deed provided as follows: 4. The Husband agrees to pay unto the Wife the sum of Three Hundred Dollars Ninety-eight cents ($ 300.98) per month, the first of said payments being due the 1st day of December, 1972, and a like amount each and every month thereafter for a period of twelve (12) months; and providing that the Husband has met each and every payment in accordance with this schedule, the Wife does hereby release and forever discharge the Husband from any further obligation of support. 6. It is agreed between the parties that the Wife shall have all the household and kitchen furnishings located in their apartment at 400-D Ridge Townhouse Apartments, except that the Husband shall have a certain stereo set as his own separate property, free and clear of *267 any claims of the Wife. Some of the household and kitchen furnishings that the deed granted to the wife were purchased with funds borrowed by petitioner and his former spouse. They were jointly and severally liable on the indebtedness. Petitioner, in an effort to comply with paragraph 6 of the deed of separation, continued to make monthly payments respecting certain household furnishings. Specifically, petitioner made payments of $ 465.23 per month, as principal, to Wachovia Bank and Trust Company during the first 9 months of 1973. In addition to the payments set forth above, petitioner made 11 monthly payments totaling $ 3,311 in 1973 to his former spouse pursuant to paragraph 4 of the deed of separation. In his 1973 return, petitioner claimed a deduction for alimony in the amount of $ 6,000. The $ 6,000 was composed of the monthly payments made directly to Wanda and a portion of the payments in the amount of $ 465.23 made during the first 9 months of 1973 in repayment of the loan made to petitioner and his former spouse. Respondent, in his notice of deficiency, disallowed the entire alimony deduction. OPINION - ALIMONY DEDUCTION Section 215 allows a husband a deduction for *268 alimony payments that are taxable to the wife under section 71 and paid to her during the husband's taxable year. Section 71(a)(2) provides: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (2) Written separation agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.
Section 71(c) provides that installment payments on a lump sum obligation specified in the decree or written instrument shall not be treated as periodic payments unless they are payable over a period in excess of 10 years. However, installments payable over a period of 10 years or less may still qualify as periodic if they come within the guidelines cited in section 1.71-1(d)(3)(i), Income Tax Regs. *269 which provides: (i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. Furthermore, section 1.71-1(d)(3)(ii) states that payments will be considered periodic regardless of whether the contingencies set forth above are imposed by local law or by the terms of the decree, instrument, or agreement. We first address the 11 monthly installments paid by petitioner to his former spouse pursuant to paragraph 4 of the deed of separation. Since the instrument provides that the payments are to be made over a 1-year period, *270 the payments could be periodic only if they are in the nature of support and are subject to any of the contingencies set forth in the regulations. The language of the deed of separation, which makes it abundantly clear that the monthly payments by petitioner to Wanda were in the nature of support, does not address itself to any of the contingencies noted in the regulations. Respondent submits that under North Carolina law alimony payments are subject only to contingencies set forth in N.C. Gen. Stat. sec. 50-16.9. [3] *271 He reasons that because that statute provides for modification of an order of a court, separation agreements voluntarily executed are not subject to any contingencies. While we agree that the North Carolina statute is inapplicable to separation agreements not incorporated into any decree, we believe, despite the lack of abundant case law on the matter, that the payments were subject to the contingencies of death and remarriage. Questions relating to the construction of a separation agreement between a husband and wife are governed in general by the rules and provisions applicable in the case of other contracts generally. The intention of the parties is to be gleaned from the language of the contract, the subject matter, the end in view and the situation of the parties at the time. Bowles v. Bowles, 237 N.C. 462, 75 S.E.2d 413 (1953); 24 Am. Jr. 2d 1026 (1966). Unless *272 a contrary intention is expressed, a wife's remarriage terminates the husband's obligation to make payments in the nature of support under a separation agreement which is silent on the question of the wife's remarriage. Medders v. Medders40 N.C. App. 681, 254 S.E.2d 44 (1979). [4] The deed of separation obligated petitioner to make payments in the nature of support in the amount of $ 300.98 per month for 12 months. Nowhere in the agreement can we ascertain that the parties intended continued payments in the event of divorce and a subsequent remarriage of the wife. Although we are acutely *273 aware of the fact that these occurrences were unlikely considering the duration of payments in this case, we nonetheless must hold that the contingency existed and thus rendered the payments periodic within the purview of section 1.71-1(d)(3)(i), Income Tax Regs. Therefore petitioner is entitled to deduct $ 3,311 in monthly payments made to his then spouse Wanda. We next address the payments made by petitioner in repayment of borrowed funds used in part to purchase certain household furnishings. Petitioner and his former spouse borrowed these moneys and were jointly and severally liable on them. The deed of separation executed by petitioner and his former spouse mandated that all kitchen and household furnishings shall belong to the wife. Petitioner, believing that the agreement contemplated a conveyance free of any encumbrance, made 9 monthly payments during 1973 of $ 465.23 each in repayment of the borrowed money.
Where payments are made pursuant to a division of property between husband and wife the payments are capital in nature and are neither includable by the recipient under section 71 nor deductible by the payor under section 215. Wright v. Commissioner, 62 T.C. 377, 389 (1974), *274 affd. 543 F.2d 593 (7th Cir. 1976); Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. per order (3rd Cir. Mar. 10, 1975). We think it evident that paragraph 6 of the agreement granting all household and kitchen furnishings to the wife and the stereo to the petitioner represented a division of property. Paragraph 4 of the deed specifically provided for the payment of monthly support and lucidly stated that compliance with its terms would effect petitioner's release from any further obligation of support. Thus, we are hard pressed to find that the agreement resulting in a transfer of furnishings to the wife and a stereo set to petitioner is anything but a property settlement. The fact that petitioner made monthly payments with respect to the loan with which some furnishings were purchased does not cause the transfer of the furnishings to the wife to be anything other than a division of property in settlement of a property right. Cf. Van Orman v. Commissioner, 418 F.2d 170 (7th Cir. 1969). [5]
However, even if we view petitioner's payments with respect to the furnishings as in the *275 nature of support, petitioner would not be entitled to deduct the payments made with respect to the encumbered furnishings. Section 71(a) applies only to payments made to a spouse or former spouse because of the family or marital relationship in recognition of the general obligation of support which is made specific by a decree or written agreement or instrument. Section 1.71-1(b)(4), Income Tax Regs.; Herring v. Commissioner, 66 T.C. 308 (1976). Nowhere in the deed of separation is it stated explicitly that petitioner was required to satisfy the outstanding indebtedness resulting from the loan both he and his former spouse procured. It is therefore apparent that these expenditures were not made pursuant to the written agreement between husband and wife and therefore do not fall within the ambit of section 71(a)(2) and section 215. Furthermore, petitioner has not shown, with the required specificity either the exact nature of the furnishings purchased or the amount of money so expended. For the above reasons petitioner is not entitled under section 215 to deduct any of the 9 monthly payments of $ 465.23 made in repayment of a loan. FINDINGS OF FACT - HOME OFFICE EXPENSES During *276 1973 petitioner was employed as a planning consultant by the Region B Planning and Development Commission of North Carolina whose headquarters were in Skyland, North Carolina. At that time petitioner resided in a rented five room house in Buncombe County, North Carolina. Commission offices were located in a building situated over a fire department and were adjacent to the community center. Activity from both the fire department and community center created brief disruptions in the conduct of normal daily business at the commission. As a result, petitioner designated two rooms in his five room house to be used for office space. Petitioner claims that the institution of this home office was at the request of the commission's secretary. One room of petitioner's home office was equipped with an L-shaped desk, typewriter, bookcases, planning reports and telephone. The second room consisted of a large conference table, six conference chairs, a telephone, drafting papers and other materials germane to petitioner's business. Petitioner continued to make use of the commission offices in Skyland, but whenever petitioner was disrupted by noise levels from the fire department he would *277 retreat to his home office. On rare occasions some of petitioner's business associates would meet at petitioner's home office to prepare plans for Federal and State grant applications. Between September 5, 1973 and the end of that year petitioner was not employed and consequently his home office was not utilized during this period. Petitioner paid $ 1,560 in 1973 for rent of his five room house. Due to difficulties in locating proper documentation petitioner has been unable to indicate the exact amount of his 1973 utility costs. Yet petitioner has shown that his monthly telephone bill approximated $ 50, and his monthly electric bill was approximately $ 20. Additionally, petitioner made one payment for home fuel oil in the amount of $ 50 in April of 1973. On his 1973 return, petitioner claimed a deduction for home office expenses in the amount of $ 920 [6] *278 based on a claim that 40 percent of the total space in his residence was used exclusively as an office. Respondent, in his notice of deficiency, disallowed the entire deduction. OPINION Petitioner's $ 920 home office deduction was disallowed by respondent on the ground that petitioner failed to establish that the amount deducted was a business expense within the meaning of section 162(a). [7] Respondent asserts that the expenses were nondeductible personal expenses within the purview of section 262. While it is true that the term "ordinary and necessary" in section 162(a) has been interpreted to mean "appropriate and helpful," Welch v. Helvering, 290 U.S. 111, 113 (1933), this court commented in Sharon v. Commissioner, 66 T.C. 515 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied *279 442 U.S. 941 (1979): The "appropriate and helpful" concept is not a litmus test. Where there is a mixture of personal and business considerations, that test, like the statutory "ordinary and necessary" test, requires a weighing and balancing of all the facts so that they may be given the proper order of importance, bearing in mind the precedence of section 262, which denies deductions for personal expenses, over section 162, which allows deductions for business expenses. * * * [66 T.C. at 524] Thus, our attention now focuses on section 1.262-1(b)(3), Income Tax Regs. which provides: Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense. Petitioner bears the burden of proving that respondent's determination on this issue *280 is incorrect. Welch v. Helvering, supra; Rule 142(a), Tax Court Rules of Practice and Procedure. We believe petitioner has failed to meet the burden on this issue. Petitioner asserted that noise levels from the fire department located beneath the offices of the Region B Planning and Development Commission made it "absolutely impossible to work." Specifically petitioner points to disturbances which occurred whenever "they took the [fire] engines in and out" and to disruptions from afternoon training maneuvers at the fire department. First, we cannot comprehend how the movement of fire engines and equipment can produce anything greater than a momentary commotion. Second, the Region B Commission meetings were held at these offices at the time of fire department maneuvers and never were the meetings interrupted by the alleged tumult from the training maneuvers. Thus we conclude that nises from the operation of the fire department could not have been so disruptive so as to make it absolutely necessary for petitioner to institute a home office. It is therefore apparent that petitioner's home office was a place where petitioner incidentally conducted business for reasons other then *281 employment exigencies. See Meehan v. Commissioner, 66 T.C. 794 (1976). Petitioner argues further that he was required to maintain a home office pursuant to a direction from the secretary of the commission. He also stated that several colleagues in the commission used his home office to draw up plans for grant applications. Yet petitioner did not introduce any witness who testified to the necessity and importance of petitioner's home office. We are left only with petitioner's own testimony as to the required nature and significance of his own home office. Under these circumstances we must view his testimony as solely self-serving and we therefore cannot allow a deduction where no corroborative ground for its allowance exists. Alternatively, petitioner argues that under section 167(a)[8] he is entitled to an allowance for depreciation of his office furniture. Petitioner has not convinced us that use of his home office ascends to the level of use in a trade or business. Rather, we are inclined to think that his infrequent business use of the office cannot alter the fact that its use was predominantly personal. A large conference table with six chairs may easily be converted into *282 a large dining room table for six. Absent any evidence to establish that petitioner's home office furnishings were used in a trade or business we must hold that all the expenses of the office including depreciation are personal and thus nondeductible pursuant to section 262. Cf. Meehan v. Commissioner, supra; Sharon v. Commissioner, supra.
Furthermore, other than petitioner's self-serving testimony, petitioner has not firmly established the cost basis of the furnishings. With an unknown depreciable basis, we are unable to comply with the mandate of section 167(g)[9] *283 and thus a depreciation deduction is not allowable on petitioner's office furniture. FINDINGS OF FACT - AUTOMOBILE EXPENSES FOR THE PERIOD SEPTEMBER 5, 1973 - DECEMBER 31, 1973 Petitioner purchased a new 1973 Oldsmobile Cutlass in March of 1973 at a price of $ 5,078.82. After petitioner left the employ of the Region B Planning and Development Commission on September 5, 1973, petitioner undertook to find employment as a planning consultant. He made several automobile trips to destinations including Knoxville, Tallahassee, and Raleigh whose alleged purpose was employment seeking. Although no employment opportunities resulted from these trips, petitioner visited several law school campuses in his travels in order to inquire about the possibility of attending law school. On his return for 1973, petitioner, using the rate of $ .12 per mile, deducted $ 1,200 in automobile expenses contending that from September 5, 1973 until the end of that year he traveled 10,000 miles in pursuit of business away from his home. In his notice of deficiency respondent disallowed the entire deduction. OPINION Section 162 allows a deduction for traveling expenses incurred while away from home in pursuit of a trade *284 or business. However, section 274(d) conditions the deduction on the taxpayer's ability to substantiate the expenditure. More specifically, the relevant portion of section 1.274-5(b)(2), Income Tax Regs. provides: (2) Travel. The elements to be proved with respect to an expenditure for travel are-- (i) Amount. Amount of each separate expenditure for traveling away from home, such as cost of transportation or lodging, * * *; (ii) Time. Dates of departure and return for each trip away from home, and number of days away from home spent on business; (iii) Place. Destinations or locality of travel, described by name of city or town or other similar designation; and (iv) Business purpose. Business reason for travel or nature of the business benefit derived or expected to be derived as a result of travel. Petitioner has not presented us with any detailed records supporting the claimed expenditure. Other than the vague recollections of petitioner, we have no clue as to the distance of his trips, their duration and their exact business purpose. Petitioner's failure to produce an account book or diary, with entries made therein contemporaneous with or near the date of each expenditure, *285 is crucial. Section 1.274-5(c), Income Tax Regs. Therefore, respondent's determination on this issue is sustained. Petitioner alternatively argues that if a deduction for travel is not allowed then he is entitled to a depreciation allowance on his automobile for the period September 5, 1973 until the end of that year. We hold that petitioner is not so entitled.
Petitioner bears the burden of proving that the Commissioner's determination is incorrect. Welch v. Helvering, supra; Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner testified that during the period of September 5, 1973 until the end of that year he registered 12,000 miles on his automobile. He further asserts that 10,000 of these miles were for business travel. Unfortunately for petitioner, we believe that in order to sustain a deduction in this case, something more than the unsubstantiated testimony of petitioner is necessary. Furthermore, petitioner readily admits that in his travels he visited the campuses of two law schools seeking information concerning admittance into law school and at least in one case he spoke with a dean. Thus, without sufficient proof to the contrary, these journeys appear *286 to be personal in nature rather than primarily business related. Petitioner's assertion that "approximately 98 percent of the mileage put on the car was for business miles" is unconvincing in light of the dearth of corroborative evidence and thus an allocation of expense between business and nonbusiness use is not possible in this case. Cf. International Artists, Ltd. v. Commissioner, 55 T.C. 94 (1970). Accordingly, we hold that petitioner has not met his burden of proof on this issue. In light of the above holding on this issue, we consider it unnecessary to address respondent's final argument alleging that even if petitioner had substantiated his search for employment, he was not engaged in a trade or business during the last 4 months of 1973. FINDINGS OF FACT - DEPRECIATION ON AUTOMOBILES For over 8 months in 1973, petitioner was the executive director of the Region B Planning and Development Commission of North Carolina. His employment mandated that he make numerous trips to cities within North Carolina and to Washington, D.C. Most often petitioner drove an automobile to these destinations and then requested reimbursement for the mileage traveled. Pursuant to his request, *287 petitioner would receive warrants for reimbursement from the North Carolina Department of Administration. Petitioner received over $ 800 for reimbursement of automobile expenses. Petitioner's salary at the commission was from two sources. He was paid by the North Carolina Department of Administration while the Region B Commission supplemented his income with local funds. This supplement was proffered by the local commission because petitioner was previously the executive director of another commission where he had been receiving a salary in excess of pay levels at the North Carolina Department of Administration. Petitioner's combined salary was $ 14,527 and this is the figure reported on his return. Nowhere on his return has petitioner included in income any reimbursement for expenses. For January, February, and part of March of 1973 petitioner used his brother's 1967 Pontiac Firebird in his business travels. In March petitioner purchased a new Oldsmobile Cutlass for $ 5,078.82 which petitioner used in his capacity as executive director of the Planning Commission. Both automobiles were also utilized for petitioner's nonbusiness affairs. Petitioner, in an amended petition, *288 claims that for 1973 he is entitled to an allowance for depreciation for the use of the Pontiac and Oldsmobile. OPINION Respondent argues that petitioner is not authorized to claim an allowance for depreciation of the 1967 Pontiac because petitioner was not the owner of the automobile. Having already discussed the issue of ownership of this automobile in connection with its casualty, we need only repeat that petitioner's brother Barnell Hyde was the owner of the car. The depreciation deduction is predicated upon an investment in property. The benefits of a depreciation allowance should inure to those who would suffer an economic loss caused by wear and exhaustion of business property. Mayerson v. Commissioner, 47 T.C. 340, 350 (1966); Blake v. Commissioner, 20 T.C. 721 (1953). We are not persuaded that petitioner had any investment in the 1967 Pontiac and therefore he is not entitled to a deduction for depreciation of the automobile. With respect to the Oldsmobile purchased by petitioner in March of 1973, we believe that petitioner has not borne his burden to prove his entitlement to a depreciation deduction. First we note that petitioner received allowances for travel expenses *289 from the North Carolina Department of Administration. An automobile allowance, although expressed in terms of mileage, may be, and generally is, fixed so as to include an estimated share of depreciation. Petitioner has failed to show that this was not the case here and we cannot find otherwise. Such a mileage allowance may be subject to a wide margin of error, but the burden rests with the taxpayer who seeks a greater depreciation deduction, to show that depreciation attributable to his employment exceeded the reimbursed amount. Geer v. Commissioner, 28 T.C. 994, 996 (1957). The record is barren of evidence necessary to support the view that the amount of actual depreciation of petitioner's automobile did indeed exceed the apparent built-in depreciation allowance reflected in the reimbursements. Furthermore, petitioner admits that the automobile was put to personal use as well as business use. Except for business mileage for which petitioner was reimbursed by the Department of Administration, we are presented with no proof that any other business mileage was registered on the automobile between January 1 and September 5, 1973.Thus the total mileage involved and the comparative *290 amounts of business and personal use are wholly unproved. See Thompson v. Commissioner, 15 T.C. 609 (1950). Therefore we must uphold respondent's determination that petitioner is not entitled to any automobile depreciation deduction. FINDINGS OF FACT - DEPRECIATION OF EMPLOYMENT CONTRACT Petitioner entered into a 1-year contract with the Region B Development and Planning commission to render services during 1973 as executive director of the commission. To acquire the position it was required that an applicant have a diploma from a 4-year college and 3 years of experience, preferably in planning. The commission breached its contract with petitioner in September of 1973 when the commission asked petitioner to resign from his office. In an amended petition, petitioner claims that he is entitled to a depreciation deduction on his employment contract which was prematurely terminated on September 5, 1973. OPINION Section 1.167(a)-3, Income Tax Regs. provide in pertinent part: If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, *291 such an intangible asset may be the subject of a depreciation allowance. * * * Depreciation allowances permit the taxpayer to recover, tax free, the total cost of assets used in a trade or business. Massey Motors v. United States, 364 U.S. 92 (1960). If a taxpayer has no capital investment in property, then depreciation or amortization deductions with respect to the property are not allowable. Fromm Laboratories, Inc. v. Commissioner, 295 F.2d 726, 729-730 (7th Cir. 1961), affg. a Memorandum Opinion of this Court; Miller v. Commissioner, 68 T.C. 767, 775 (1977).
Petitioner claims that although he incurred no costs at the time he acquired the contract, costs for his college education provide the basis for his investment in the contract.Petitioner attempts to justify this assertion by citing the employment requirement that he have a 4-year college education. There is no merit to petitioner's claim. We have held that the costs of obtaining a general college education may not be amortized. Sharon v. Commissioner, supra (costs of obtaining license to practice law including costs of college and law school not amortizable); Denman v. Commissioner, 48 T.C. 439 (1967) (costs of obtaining *292 an engineering degree not amortizable). See Carroll v. Commissioner, 51 T.C. 213, 216 (1968), affd. 418 F.2d 91 (7th Cir. 1969). These expenses are personal in nature and must be deemed nondeductible within the purview of section 262. Furthermore, petitioner's college expenses fall within section 1.162-5(b) (2), [10] *293 Income Tax Regs., which declares that education expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment are not deductible. We note that in a technical sense petitioner is seeking to amortize the cost of acquiring his employment contract under section 167 *294 and is not focusing on the deduction of education expenditures under section 162. However in Sharon (66 T.C. at 526) we stated our disapproval of this distinction as follows: * * * the petitioner attempts to distinguish our opinion in Denman by asserting that he is not attempting to capitalize his educational costs, but rather, the cost of his license to practice law. Despite the label which petitioner would apply to such costs, they nonetheless constitute the costs of his education, which are personal and nondeductible. Therefore, we hold that petitioner is not entitled to an amortization deduction with respect to his employment contract. Accordingly, we need not address respondent's argument concerning the impossibility of amortizing a 1-year contract. FINDINGS OF FACT - INVESTMENT CREDIT As noted earlier, a 1967 Pontiac automobile was purchased by petitioner's brother Barnell Hyde in 1972 and was borrowed by petitioner for the first 2 months of 1973 for his employment at the Region B Planning and Development Commission and for personal purposes. Petitioner purchase a new 1973 Oldsmobile on March 6, 1973 for $ 5,078. In 1973, this automobile was used by petitioner for personal *295 endeavors and in his employment at the Region B Planning Commission for 6 months beginning in March of 1973. On September 5, 1973 petitioner's employment at the commission was terminated. After that date petitioner made several automobile trips to southeastern cities, none of which has been established as being primarily related to business. Petitioner obtained no further employment for the duration of 1973. Petitioner, in an amended petition, [11] claims an investment credit for both automobiles for 1973 as well as for the desk, conference table, and chairs placed by petitioner in his home office. OPINION - INVESTMENT CREDIT Sections 38 and 46 allow as a credit against tax a specified percentage of the taxpayer's qualified investment for the taxable year. [12] *296 *297 With regard to used section 38 property, section 48(c)(1) provides: SEC. 48. DEFINITIONS; SPECIAL RULES. (c) Used Section 38 Property.-- (1) In general.--For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not be treated as "used section 38 property" if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d)(2)(A) or (B) to a person who used such property before such acquisition). We have found that petitioner's brother owned the 1967 Pontiac which was borrowed by petitioner for the first 2 months of 1973. Petitioner had no investment in the property and thus his temporary use of the automobile cannot justify the allowance of an investment credit. Furthermore, since depreciation is not allowable to petitioner on the automobile and neither has petitioner shown that the 6-year old Pontiac had a useful life *298 of more than 3 years upon its acquisition, the automobile is not section 38 property as defined in section 48(a) [13] and as such is not subject to the investment credit. Next, we consider petitioner's claim for an investment credit on his new 1973 Oldsmobile. Petitioner did use this automobile in his business as an employee at the Region B Planning and Development Commission until September 5, 1973 when his employment at the commission was terminated. In this regard, section 1.46-3(a)(2) provides in pertinent part: (2) The basis (or cost) of section 38 property placed in service during a taxable year shall not be taken into account in determining qualified investment for such year if such property is disposed of or otherwise ceases to be section 38 property during such year * * *. Section 38 property includes only property which is subject to the allowance for depreciation. Thus it is clear that property whose use has been eliminated from a trade or business or income producing activity in the same taxable year as its insertion in service, is not a qualified investment and thus not subject to the credit. Accordingly petitioner's entitlement to the credit hinges *299 upon whether his automobile was depreciable between September 5, 1973 and the end of that year.
Unfortunately for petitioner, we have held that he was not entitled to a depreciation allowance on his 1973 Oldsmobile for the last 4 months of 1973. That holding was premised on our conclusion that petitioner has not adequately established that his journeys to Southeastern United States cities were primarily related to business. Accordingly, we must find the petitioner's automobile ceased to be section 38 property and is therefore not property which is subject to the investment credit. Similarly, we have determined that petitioner's office furniture was not subject to a depreciation allowance. Therefore it is not section 38 property and petitioner's claim for an investment credit thereon must be denied. FINDINGS OF FACT - MEALS AND LODGING EXPENSE Petitioner incurred expenses for meals and lodgings while away from home between September 5, 1973 and the end of that year.In an amended petition, petitioner alleges that he is entitled to deduct $ 650 for meals and lodging which were incurred in his capacity as a professional planning consultant. OPINION Respondent asserts that petitioner *300 has failed to satisfy the substantiation requirements of section 274(d). We agree.
Under section 274(d) no deduction for traveling expenses (including meals and lodging while away from home) is allowed unless the amount, time, place, and business purpose of the expenditure areestablished by adequate record or by sufficient evidence corroborating the taxpayer's statement. The only evidence presented by petitioner relating to the period in question are a few credit card vouchers, none of which detail the business purpose of the expenses or their duration. We therefore hold that these vouchers fall far short of adequate corroboration, and thus petitioner's claim for a deduction for meals and lodging expenses is disallowed. See Rutz v. Commissioner, 66 T.C. 879 (1976); Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1235 (1971). FINDINGS OF FACT - MEDICAL EXPENSES On his return petitioner claimed a medical expense deduction of $ 116 representing one-half of insurance premiums paid by petitioner. The parties have stipulated that one-half of a $ 218 premium for hospital insurance is properly deductible by petitioner. The item still in dispute is a $ 15 premium paid by petitioner *301 to the Travelers protective Association of America which provided for accident coverage. OPINION Section 213(a) provides for a deduction for amounts paid during the taxable year for medical care of the taxpayer, his spouse and dependents. Medical care is defined in section 213(e) which provides in pertinent part: Sec. 213. MEDICAL, DENTAL, ETC., EXPENSES. (e) Definitions.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or (C) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical carereferred to in subparagraphs (A) and (B). (2) In the case of an insurance contract under which amounts are payable for other than medical care referred to in subparagraphs (A) and (B) of paragraph (1)-- (A) no amount shall be treated as paid for insurance to which paragraph (1) (C) applies unless *302 the charge for such insurance is either separately stated in the contract, or furnished to the policyholder by the insurance company in a separate statement, (B) the amount taken into account as the amount paid for such insurance shall not exceed such charge, and (C) No amount shall be treated as paid for such insurance if the amount specified in the contract (or furnished to the policyholder by the insurance company in a separate statement) as the charge for such insurance is unreasonably large in relation to the total charges under the contract. Prior to 1967 amounts paid for accident insurance were deductible pursuant to the explicit language of the statute then in effect. However, section 213(e) was amended by the Social Security Amendments of 1965, section 106, Pub. L. 89-97, 79 Stat. 336, which deleted the reference to accident insurance. In this regard section 1.213-1(e)(4)(i), Income Tax Regs., states: Sec. 1.213-1(e)(4)(i)(a). * * * In the case of an insurance contract under which amounts are payable for other than medical care (as, for example, a policy providing an imdemnity for loss of income or for loss of life, limb, or sight)-- (1) No amount shall be treated as paid *303 for insurance covering expenses of medical care * * * unless the charge for such insurance is either separately stated in the contract or furnished to the policyholder by the insurer in a separate statement. This regulation is adequately supported by legislative history. See H. Rept. 213, 89th Cong., 1st Sess. 179 (1965). Since petitioner's expense relates only to accident coverage with no separate statement from the insurer regarding medical care, the respondent's determination that a deduction with respect to this item is not allowable is sustained. FINDINGS OF FACT - TAXES Petitioner deducted $ 960 on his 1973 return for taxes. Due to a mathematical error of $ 100 petitioner's claim has been reduced to $ 860. As noted earlier, petitioner purchased an automobile in March of 1973 on which sales tax of $ 94 was paid. Respondent, in his notice of deficiency allowed petitioner a deduction for tax of $ 704.10. [14] The parties have now stipulated that petitioner has provided substantiation for $ 798 in tax expenditures (rounded to the nearest dollar) and thus $ 62 still remains in dispute. OPINION *304 Petitioner's entitlement to deduct taxes paid under section 164 is conditioned on his satisfaction of the usual burden of proof, Rule 142(a) Tax Court Rules of Practice and Procedure.The vague assertions made by petitioner that he somehow underestimated items which have been allowed by respondent is thoroughly unconvincing. Petitioner admits that he has no documentation for the alleged $ 62 tax item still in dispute.Accordingly, we sustain respondent's position on this issue. FINDINGS OF FACT - CHARITABLE CONTRIBUTIONS On his return for 1973, petitioner deducted $ 227 as charitable contributions.Respondent, in the statutory notice, disallowed the entire amount but the parties have now stipulated that petitioner contributed $ 50 to the Boy Scouts of America. Thus the dispute centers on $ 177 deducted by petitioner as a charitable contribution. At trial petitioner requested and it was agreed that the record remain open in order that petitioner could properly document the contributions he deducted. Petitioner has not come forward with such documentation. OPINION Respondent's disallowance of petitioner's deduction for charitable contributions in excess of $ 50 is focused on the lack *305 of documentation to support the deduction. Petitioner's only substantiation for these claimed expenditures was his testimony. Petitioner asserts that he was president of the North Carolina Association for Children With Specific Learning Disabilities and that he made several trips on behalf of that organization. His testimony was overly general and indefinite, evincing no clue as to the exact nature of the expenditure, its amount, time or place. Accordingly, we view petitioner's testimony as insufficient to support the claimed deduction and respondent's view is sustained. FINDINGS OF FACT - DEPENDENCY EXEMPTION During 1973, petitioner's mother, Alice M. Hyde, resided in Asheville, North Carolina, in a house owned by Herbert L. Hyde, petitioner's brother. Mrs. Hyde paid no rent to Herbert Hyde for living in the house. She received social security benefits approximating $ 800 in 1973. Petitioner has not shown that he made any expenditures for support of his mother. Petitioner claimed a dependency exemption for his mother on his 1973 return asserting that he provided $ 800 for his mother's support.On February 6, 1979, Herbert L. Hyde signed a multiple support declaration stating *306 that he understood that his brother, the petitioner, was claiming a dependency exemption for Alice M. Hyde, and that Herbert would not so claim an exemption. Herbert did not claim Mrs. Alice M. Hyde as a dependent in 1973. In his notice of deficiency, respondent disallowed the dependency exemption on the ground that petitioner failed to establish that he provided more than one-half of his mother's support.
OPINION The question posed herein is whether pursuant to section 151(e) petitioner is entitled to a dependency exemption for his mother.
The general rule provides that a dependency exemption is authorized where certain prescribed individuals received over half of their support from the taxpayer. Section 152(a). Where no person contributed over half the support of an individual described in section 152(a), then persons contributing more than 10 percent of such support may enter into a multiple support agreement whereby the dependency exemption is assigned to one of the contributors. In this regard section 1.152-3(c), Income Tax Regs., provides in pertinent part: The member of a group of contributors who claims the dependency deduction for an individual under the multiple support *307 agreement provisions of section 152(c)must attach to his income tax return for the year of the deduction a written declaration from each of the other persons who contributed more than 10 percent of the support of such individual and who, but for the failure to contribute more than half of the support of the individual, would have been entitled to claim the individual as a dependent. * * * The taxpayer claiming the individual as a dependent should be prepared to furnish other information, when required, which will substantiate his right to claim such individual as a dependent. Such information may include a statement showing the names of all contributors (whether or not members of the group described in section 152(c)) and the amount contributed by each to the support of the claimed dependent. (Emphasis added.) In the instant case, the multiple support agreement was entered into almost 6 years after the due date of petitioner's 1973 return. Accordingly, we hold that the multiple support agreement is invalid. [15] *308 Thus, for petitioner to claim the exemption for his mother he must show he provided over half of her support.Petitioner's mother received approximately $ 800 in Social Security payments and received housing from petitioner's brother. The only evidence relating to petitioner's contributions for the support of his mother is petitioner's unsupported statement on his tax return that he contributed $ 800 for his mother's support. We have found that petitioner has not substantiated this expenditure, yet we note that even if documentation of this expenditure had been produced it would not have been nearly enough to constitute over one-half of Alice M. Hyde's support. [16] Respondent's determination is upheld. FINDINGS OF FACT *309 - EXPENSE OF PROFESSIONAL TAX ADVICE In an amended petition, petitioner claims a deduction for professional tax advice. [17] Petitioner produced no evidence at trial relating to the claimed expenditure. OPINION Since the burden of proof rests with petitioner on this issue and petitioner has failed to produce any evidence in support of this fact we must sustain respondent's determination. Rule 149(b), Tax Court Rules of Practice and Procedure.
FINDINGS OF FACT - FILING STATUS Petitioner and his former spouse, Wanda Lee Hyde, were married on January 30, 1970. No children were born of this marriage. On November 14, 1972, petitioner and his former spouse executed a deed of separation certified by a Magistrate of Buncombe County, North Carolina. A judgment of divorce was rendered by the General Court of Justice, District Court Division of North Carolina on January 23, 1974. *310 During 1973, petitioner's mother, Mrs. Alice M. Hyde, resided in Asheville, North Carolina, in a house owned by petitioner's brother, Herbert L. Hyde. Petitioner did not furnish over half the cost of maintaining a household for his mother. Moreover, petitioner has not established that he made any expenditures for his mother's support. Petitioner had no dependents who lived with him. On his return for 1973, petitioner computed his tax liability utilizing the head of household rates.Respondent disallowed the use of these rates and applied the rates designated for married individuals filing separately. OPINION Section 1(b) prescribes a tax pursuant to the rates therein on the taxable income of a head of household. Section 2(b)(1) defines head of household as follows: SEC. 2. DEFINITIONS AND SPECIAL RULES. (b) Definition of Head of Household.-- (1) In General.--For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either-- (A) maintains as his home a household which constitutes for such taxable year the principal *311 place of abode, as a member of such household, of-- (i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. Section 2(b)(2)(B) provides that a person who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. Separation arising from an agreement between husband and wife, without sanction of a court decree is not within the purview of the statute. See Donigan v. Commissioner, 68 T.C. 632 (1977). [18] *313 Petitioner's divorce was not final *312 until a judgment so declaring was entered on January 23, 1974. The deed of separation still in effect between petitioner and his former spouse at the end of 1973 was no more than a certified separation agreement. Its certification does not convert it into a decree of separate maintenance or divorce. Under North Carolina law such certification of separation agreements satisfies the mandate of N.C. Gen. Stat. sec. 52-6(a), (b) and (c) (repealed by 1977 N.C. Sess. Laws, c.375, s.1, effective January 1, 1978). [19] *314 Indeed the purpose of this section was to give validity to transactions invalid at common law, between husband and wife, provided the prescribed formality is observed. Perry v. Stancil, 237 N.C. 442, 75 S.E.2d 512 (1953). The statute allows the wife to contract away her right to support and maintenance. Hinkle v. Hinkle, 266 N.C. 189, 146 S.E.2d 73 (1966); Fuchs v. Fuchs, 260 N.C. 635, 133 S.E.2d 487 (1963); Kiger v. Kiger, 258 N.C. 126, 128 S.E.2d 235 (1962). Thus, certification by a magistrate of the agreement only upholds the validity of the contract rather than convert it into a court ordered decree. Nor may petitioner qualify as an unmarried individual by virtue of section 2(c). Section 2(c) directs us to section 143(b) which provides as follows: SEC. 143. DETERMINATION OF MARITAL STATUS. (b) Certain Married Individuals Living Apart.--For purposes of this part, if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under section 151, (2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and (3) *315 during the entire taxable year such individual's spouse is not a member of such household, such individual sall not be considered as married. Since petitioner had no dependents living with him be cannot be considered unmarried by virtue of section 143(b) for purposes of using the tax rates in section 1 (b). Furthermore, petitioner did not maintain the household in which his mother Alice M. Hyde [20] lived and thus he does not qualify as a head of household under section 2(b)(1)(B). Since petitioner was still married at the close of 1973 and no joint return was filed by petitioner and his former spouse for that year, the petitioner must file utilizing the tax rates applicable to married individuals filing separate returns as found in section 1(d). FINDINGS OF FACT - POLITICAL CONTRIBUTIONS CREDIT for the year 1973, petitioner has not shown that he made any political contributions. In his amended petition, *316 petitioner claimed a tax credit for political contributions in 1973. Petitioner seeks a $ 25 credit for alleged contributions. OPINION Section 41[21] *317 allows an individual a tax credit for one-half of political contributions made within the taxable year. The maximum credit available to an individual for 1973 contributions is $ 12.50. Respondent's attack on the credit claimed by petitioner focuses on the poor recordkeeping system of petitioner. Petitioner's attempt at verifying his claimed contribution consists of a check register wherein an entry marked "Democrats" purports to substantiate an alleged contribution. Considering that this entry is chronologically out of order in the check register and that there is no other documentary corroboration of the date and purpose of the contribution we hold that this evidence is insufficient to sustain petitioner's claim for a tax credit for political contributions. Petitioner also contends that he is entitled to a tax credit carryover into 1973 for political contributions allegedly made during 1972. Even if petitioner could establish that he made these contributions, *318 there is no provision in the Internal Revenue Code for a tax credit carryover with respect to political contributions. Accordingly, respondent's position on this issue is sustained. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.↩
2. SEC. 165. LOSSES. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 100. For purposes of the $ 100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.↩
3. N.C. Gen. Stat. sec. 50-16.9 provides: § 50-16.9. Modification of order.--(a) An order of a court of this State for alimony or alimony pendente lite, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested. This section shall not apply to orders entered by consent before October 1, 1967. (b) If a dependent spouse who is receiving alimony under a judgment or order of a court of this State shall remarry, said alimony shall terminate. (c) When an order for alimony has been entered by a court of another jurisdiction, a court of this State may, upon gaining jurisdiction over the person of both parties in a civil action instituted for that purpose, and upon a showing or changed circumstances, enter a new order for alimony which modifies or supersedes such order for alimony to the extent that it could have been so modified in the jurisdiction where granted.↩
4. See also the following cases from other jurisdictions: Taliaferro v. Taliaferro, 125 Cal. App.2d 419, 270 P.2d 1036 (1954); Brown v. Farkas, 195 Ga. 653, 25 S.E.2d 411 (1943); Davis v. Welber, 278 App. Div. 36, 103 NYS2d 239 (1951). In Davis v. Welber it was held that while a statute terminating or authorizing a court to terminate an award of alimony on the wife's remarriage does not affect payments due under a contract, the agreement should be construed in light of the policy of the statute terminating alimony on remarriage. In this connection see N.C. Gen. Stat. section 50-16.9↩ cited in fn. 3.
5. See also Biddle v. Commissioner, T.C. Memo. 1979-347; Luhman v. Commissioner, T.C. Memo. 1970-81↩.
6. Petitioner's home office deduction was computed as follows: Rent
$ 1,800
Telephone
500
$ 2,300
.40
(use of two rooms out of five)
$ 920
It is noted that on his return petitioner used $ 1,800 as the amount paid for rent in 1973 while he has now stipulated that $ 1,560 was the rent expense for the year. It is noted also that petitioner now claims that he is entitled to deductions for electric and fuel costs even though these items were omitted on his tax return.
7. The pertinent portion of section 162(a) provides: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *↩
8. SEC. 167. DEPRECIATION. (a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)-- (1) of property used in the trade or business, or (2) of property held for the production of income.↩
9. Section 167(g) provides: (g) Basis for Depreciation.--The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property.
10. Section 1.162-5(b) provides in pertinent part: (b) Nondeductible educational expenditures--(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures, or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed.
11. The amount of investment credit claimed by petitioner appears only on brief and is summarized as follows: ↩
1967 Pontiac Firebird
$ 18.66
1973 Oldsmobile Cutlass
296.34
Furniture
31.85
12. The relevant portion of section 46 provides: SEC. 46. AMOUNT OF CREDIT. (c) Qualified Investment.-- (1) In general.-- For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year, the aggregate of-- (A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year, plus (B) the applicable percentage of the cost of each used section 38 property (as defined in section 48(c)(1)) placed in service by the taxpayer during such taxable year. (2) Applicable percentage.--For purposes of paragraph (1), the applicable percentage for any property shall be determined under the following table: The applicable
If the useful life is
percentage is--
3 years or more but less than 5
years 33 1/3
5 years or more but less than 7
years 66 2/3
7 years or more
100
For purposes of this subpart, the useful life of any property shall be the useful life used in computing the allowance for depreciation under section 167 for the taxable year in which the property is placed in service.
The pertinent portion of section 48 provides: SEC. 48.DEFINITIONS; SPECIAL RULES. (a) Section 38 Property.-- (1) In general.-- Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property, or Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more.
13. See footnote 12.↩
14. The $ 704.10 deduction was arrived at as follows: ↩
State and local income tax
$ 533.10
State and local gasoline tax
69.00
General sales tax
102.00
$ 704.10
15. Even if the multiple support agreement was valid, petitioner would still not meet the requirements of section 152(a)(1) as it is necessary for petitioner to establish that no other person contributed more than half of his mother's support. De La Garza v. Commissioner, 46 T.C. 446, 448-449↩ (1966). Petitioner has failed to prove that Herbert L. Hyde did not provide more than half of the support of Alice M. Hyde.
16. This conclusion necessarily follows from the fact that lodging for Alice M. Hyde was provided by Herbert Hyde and Alice M. Hyde received $ 800 in social security benefits. Section 1.152-1(a)(2)(i) and (ii), Income Tax Regs.↩
17. The petition omits any amount for the claimed expenditure. It is only in pertitioner's brief that $ 67.40 is claimed as an expenditure for professional tax advice. For this reason, we have omitted the amount of the claimed expenditure from our opinion. See Rule 143(b), Tax Court Rules of Practice and Procedure.↩
18. See also Kellner v. Commissioner, T.C. Memo. 1971-103, affd. 468 F.2d 627 (2nd Cir. 1972), which declares that actual separation is not enough to qualify for head of household status. 19. § 52-6. Contracts of wife with husband affecting corpus or income of estate; authority, duties and qualifications of certifying officer; certain conveyances by married women of their separate property.--(a) No contract between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of the wife, or the accruing income thereof for a longer time than three years next ensuing the making of such contract, nor shall any separation agreement between husband and wife be valid for any purpose, unless such contract or separation agreement is in writing, and is acknowledged before a certifying officer who shall make a private examination of the wife according to the requirements formerly prevailing for conveyance of land. (b) The certifying officer examining the wife shall incorporate in his certificate a statement of his conclusions and findings of fact as to whether or not said contract is unreasonable or injurious to the wife. The certificate of the officer shall be conclusive of the facts therein stated but may be impeached for fraud as other judgments may be. (c) Such certifying officer must be a justice, judge, magistrate, clerk, assistant clerk or deputy clerk of the General Court of Justice or the equivalent or corresponding officers of the state, territory or foreign country where the acknowledgment and examination are made and such officer must not be a party to the contract.↩
20. We have held that petitioner was not entitled to a dependency exemption for his mother. Even if petitioner had so qualified, by virtue of the multiple support agreement which he introduced, he would still be precluded from using head of household rates by section 2(b)(3)(B)(ii).↩
21. The relevant portion of section 41 provides: SEC. 41. CONTRIBUTIONS TO CANDIDATES FOR PUBLIC OFFICE. (a) General Rule.--In the case of an individual, there shall be allowed, subject to the limitations of subsection (b), as a credit against the tax imposed by this chapter for the taxable year, an amount equal to one-half of all political contributions, payment of which is made by the taxpayer within the taxable year. (b) Limitations.-- (1) Maximum credit.--The credit allowed by subsection (a) for a taxable year shall be limited to $ 12.50 ($ 25 in the case of a joint return under section 6013). (2) Application with other credits.--The credit allowed by subsection (a) shall not exceed the amount of the tax imposed by this chapter for the taxable year reduced by the sum of the credits allowable under section 33 (relating to foreign tax credit), section 35 (relating to partially tax-exempt interest), section 37 (relating to retirement income), and section 38 (relating to investment in certain depreciable property). (3) Verification.--The credit allowed by subsection (a) shall be allowed, with respect to any political contribution, only if such political contribution is verified in such manner as the Secretary or his delegate shall prescribe by regulations.↩